UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID GLENN BROWN,

    Plaintiff,

    v.

CONTRA COSTA COUNTY, et al.,

    Defendants.

_____/

No. C 12-1923 PJH

**ORDER GRANTING MOTION TO DISMISS FOURTH AMENDED COMPLAINT IN PART AND DENYING IT IN PART**

    Defendants' motion to dismiss the fourth amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim came on for hearing before this court on July 13, 2013.  Plaintiff David Glenn Brown appeared in propria persona, and defendants County of Contra Costa ("the County"), Contra Costa District Attorney Mark Peterson ("Peterson"), Karen Zelis-Holder ("Zelis-Holder"), and Douglas C. MacMaster ("MacMaster") appeared by their counsel Peter Edrington and James Marzan.  Having read the parties' papers, including the supplemental briefing filed by the parties after the hearing, and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

## BACKGROUND

    The procedural and factual background is as set forth in the October 9, 2012 order granting the motion to dismiss the first amended complaint, and the March 14, 2013 order granting the motion to dismiss the third amended complaint ("TAC").[1]

    The fourth amended complaint ("4thAC") alleges three causes of action – a claim under 42 U.S.C. § 1981, alleging discrimination and harassment based on race, and

---

[1] Plaintiff did not file a second amended complaint.

retaliation, against all defendants; a claim of "violation of civil rights" under 42 U.S.C. § 1983, alleging discrimination and harassment in violation of the Fourteenth Amendment, against all defendants; and a Monell claim alleging racial discrimination, in violation of the Fourteenth Amendment, against the County.

Defendants now seek an order dismissing all three causes of action for failure to state a claim. They also argue that because plaintiff has been unable to amend the complaint to the court's satisfaction, despite having been afforded two opportunities to do so, this dismissal should be with prejudice.

In addition, at the hearing on this motion, the court granted defendants' request for leave to file a supplemental motion to dismiss, based on a theory of res judicata. The briefing of the supplemental motion having been completed, the court now issues this order adjudicating the supplemental motion as well as the original motion to dismiss the 4thAC.

**DISCUSSION**

A.  Motion to Dismiss Based on Res Judicata

In their supplemental motion, defendants argue that the present action should be dismissed because of collateral estoppel (issue preclusion), based on a ruling issued by a Workers Compensation Appeals Board ("WCAB") Administrative Law Judge ("ALJ") on June 27, 2013, less than a week before the hearing on the motion to dismiss.

1.  Legal standard

A defendant may raise the affirmative defense of res judicata by way of a motion to dismiss under Rule 12(b)(6). See Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984). Under 28 U.S.C. § 1738, federal courts are required to give full faith and credit to state court judgments. San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336 (2005); Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009). To determine the preclusive effect of a state court judgment, federal courts look to state law. Heinrichs v. Valley View Development, 474 F.3d 609, 615 (9th Cir. 2007).

In California, "res judicata" describes the preclusive effect of a final judgment on the merits, and can take the form of "issue preclusion" or "claim preclusion." Mycogen Corp. v.

1  Monsanto Co., 28 Cal. 4th 888, 896-97 (2002).[2]  The doctrine of res judicata bars not only
2  those claims/issues actually litigated in a prior proceeding, but also claims/issues that could
3  have been litigated.  Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362,
4  364 (9th Cir. 1993); Busick v. Workmen's Comp. Appeals Bd., 7 Cal. 3d 967, 975 (1972).

        Generally, collateral estoppel (issue preclusion) bars relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous proceeding is identical to the one sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.  See Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990); Happy Nails & Spa of Fashion Valley, L.P., v. Su, 217 Cal. App. 4th 1459, 159 Cal. Rptr. 3d 503, 510-11 (2013).  The doctrine "is grounded on the premise that 'once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.'"  Murray v. Alaska Airlines, Inc., 50 Cal. 4th 860, 864 (2010).

        Claim preclusion prevents "relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."  Mycogen, 28 Cal. 4th at 896.  Under this doctrine, a single cause of action must be decided in one suit and if not brought initially, may not be raised in a subsequent case.  Id. at 896-97.  A claim is barred by claim preclusion if three requirements are met:  (1) the second lawsuit involved the same "cause of action" as the first lawsuit, (2) there was a final judgment on the merits in the first lawsuit, and (3) the party to be precluded was a party, or in privity with a party, to the first lawsuit.  San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys., 568 F.3d 725, 734 (9th Cir. 2009).

        Thus, in order for res judicata to apply there must be a final judgment or determination of an issue – that is, "a judgment or determination that is final in the sense

---

[2] The United States Supreme Court uses the term "res judicata" to refer collectively to claim preclusion and issue preclusion.  See Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  The California Supreme Court generally uses the term "res judicata" to refer to claim preclusion, and the term "collateral estoppel" to refer to issue preclusion.  Mycogen, 28 Cal. 4th at 897.

that no further judicial act remains to be done to end the litigation." People v. Scott, 85 Cal. App. 4th 905, 919 (2000). In California, the Workers' Compensation Appeals Board ("WCAB") is not a mere administrative body, but is a constitutional court. "A workers' compensation judgment can have res judicata effect if it meets all the doctrine's other essential elements." Hughes v. Atlantic Pacific Construction Co., 194 Cal. App. 3d 987, 1002 (1987) (citation and quotation omitted).

An order of the WCAB is final for the purpose of seeking judicial review when it "settles, for purposes of the compensation proceeding, an issue critical to the claim for benefits, whether or not it resolves all the issues in the proceeding or represents a decision on the right to benefits." Maranian v. Workers' Comp. Appeals Bd., 81 Cal. App. 4th 1068, 1075 (2000); see also Wal-Mart Stores, Inc. v. Workers' Comp. Appeals Bd., 112 Cal. App. 4th 1435, 1438, n.3 (2003). Such final orders include, for example, threshold orders dismissing a party, rejecting an affirmative defense, terminating liability, or determining whether the employer has provided compensation coverage. See Maranian, 81 Cal. App. 4th at 1075.

Under California Labor Code § 5900,

> any person aggrieved directly or indirectly by any final order, decision, or award made and filed by the appeals board or a worker's compensation judge under any provision contained in this division may petition the appeals board for reconsideration in respect to any matters determined or covered by the final order, decision or award, and specified in the petition for reconsideration . . . .

Cal. Lab. Code § 5900. Further, Labor Code § 5903 provides that

> At any time within 20 days after the service of any final order, decision, or award made and filed by the appeals board or a worker's compensation judge granting or denying compensation, or arising out of or incidental thereto, any person aggrieved thereby may petition for reconsideration on one or more of the grounds specified in the statute.

Cal. Lab. Code § 5903 (emphasis added).

The filing of a petition for reconsideration is a prerequisite to a petition for writ of review in the Court of Appeal. Cal. Lab. Code § 5901; see also Scott v. Workers' Comp. Appeals Bd., 122 Cal. App. 3d 979, 984 (1981). Under Cal. Labor Code § 5950,

4

> any person affected by an order, decision, or award of the appeals board may, within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which he resides, for a writ of review, for the purpose of inquiring into and determining the lawfulness of the original order, decision, or award following reconsideration. The application for writ of review must be made within 45 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is had on the appeals board's own motion, within 45 days after the filing of the order, decision, or award following reconsideration."

Cal. Lab. Code § 5950 (emphasis added). This 45-day limitation period is jurisdictional, and may not be extended, even under the provision in the Code of Civil Procedure allowing for an extension of time to respond to a document served by mail. Camper v. Workers' Comp. Appeals Bd., 3 Cal. 4th 679, 684-85 (1992).

Appellate review is limited to final orders that affect a substantial right or liability of a party. Duncan v. Workers' Comp. Appeals Bd., 166 Cal. App. 4th 294, 299 (2008). The failure of an aggrieved party to seek judicial review of a final order of the WCAB bars later challenge to the propriety of the order or decision before either the WCAB or the court. Id. at 1075-76; see also Safeway Stores, Inc. v. Workers' Comp. Appeals Bd., 104 Cal. App. 3d 528, 532-35 (1980).

2. Defendants' motion

Defendants contend that plaintiffs' claims in this case are barred by res judicata, based on the June 27, 2013 ruling by the WCAB.

Plaintiff filed the complaint in the present case on April 18, 2012. Previously, on July 25, 2011, he filed a Worker's Compensation claim, alleging that his injury occurred "at office, due to treatment by superiors." After the County denied his claim, plaintiff filed an appeal with the WCAB.

The matter was tried before the WCAB in July and September 2012, and January and March 2013. The WCAB trial was in the form of a full evidentiary hearing. Exhibits were marked and entered into evidence. Witnesses (including the individual defendants in this case – Peterson, MacMaster, Zellis-Holder – as well as other current and former Deputy District Attorneys) appeared and testified. Plaintiff also testified.

Plaintiff represented himself at the trial. In summarizing his claim, he stated that he

had been the victim of racial, political, and personal harassment in the workplace by Doug MacMaster, Karen Zellis Holder, Mark Peterson, Tom Kensok, and Dan Cabral; and that this harassment was ongoing from December 2010 to the present. His claimed injury was "psychiatric injury."

The WCAB ALJ issued findings of fact and a final order on June 27, 2013. The ALJ reviewed the evidence presented by plaintiff regarding the "many incidents" he believed to be "actual events of employment" that had caused his psychiatric injury. The ALJ concluded that some of the incidents were "actual events" and some were not. With regard to the "actual events," the ALJ found that none provided a basis for asserting a claim of psychiatric injury, because each was a lawful, nondiscriminatory, good-faith personnel action.

Plaintiff filed a petition for reconsideration on July 17, 2013 – which was within the 20 days allowed under Labor Code § 5903 for seeking review of the WCAB order. On September 13, 2013, the WCAB granted the petition. Thus defendants' motion to dismiss based on the res judicata effect of the June 27, 2013 WCAB order must be DENIED as premature.

B.   Motion to Dismiss for Failure to State a Claim

   1.   Legal standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

6

a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

2. Defendants' motion

In the order dismissing the TAC, the court directed plaintiff to clarify which claims he was asserting under which cause of action, the elements of each, and the facts supporting the elements of each; and also to specify which defendant is alleged to have committed which action. Defendants assert that plaintiff has failed to comply with this directive, and that the 4thAC must be dismissed for failure to state a claim.

The court agrees, and finds that the motion must be GRANTED. The 4thAC is largely incomprehensible. Plaintiff has compiled a laundry list of grievances, but has failed to identify which defendant is being accused of which violation, and has also failed to clearly explain which of the myriad facts support the elements of each claim against each defendant.

7

In particular, plaintiff has failed to articulate the grounds of his entitlement to relief, relying instead on "a formulaic recitation of the elements" of each cause of action – a method of pleading that is clearly unacceptable under the standards set forth the by the Supreme Court, as the allegations are insufficient to "raise a right to relief above the speculative level." See e.g., Twombly, 550 U.S. at 555.

The court will grant plaintiff one final opportunity to amend the complaint. If the fifth amended complaint fails to state a cognizable claim, the court will dismiss the action with prejudice.

          a.      Claim under § 1981

In the first cause of action under § 1981, plaintiff alleges discrimination, harassment, and retaliation, against the individual defendants (Peterson, Zelis-Holder, and MacMaster). Plaintiff has failed to clearly state the facts that support each of these claims, and has also failed to specify which defendant each claim is being asserted against. Instead, plaintiff has simply recited a series of "Facts" without linking them to specific § 1981 claims or the elements of those claims.

Section 1981 guarantees "all persons" the right to "make and enforce contracts." Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting 42 U.S.C. § 1981(a)). Making and enforcing contracts includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

To state a claim of discrimination under § 1981, a plaintiff must identify an impaired "contractual relation," by alleging facts showing that intentional racial discrimination prevented the creation of a contractual relationship or impaired an existing contractual relationship. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006). That is, plaintiff must allege facts showing intentional or purposeful discrimination based on race in the workplace. See General Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 387-91 (1982); see also Johnson, 534 F.3d at 1123 (§ 1981 covers only discriminatory conduct based on race or ethnicity).

8

Specifically, as to each defendant he claims discriminated against him, plaintiff must allege facts showing that the defendant engaged in some discriminatory conduct, that discriminatory conduct was intentional, that the discrimination was based on plaintiff's race, and that the discriminatory conduct prevented the creation of a contractual relationship or impaired an existing contractual relationship with plaintiff's employer. It is not sufficient for plaintiff merely to recite the elements of the claim, or to allege that "defendants . . . individually and collectively engaged in a pattern of . . . conduct."

Section 1981 also encompasses employment-related retaliation claims. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 452-57 (2008); Johnson v. Lucent Techs., Inc., 653 F.3d 1000, 1006 (9th Cir. 2011). As with other employment-related claims, a plaintiff alleging a claim of retaliation under § 1981 must allege facts showing that he engaged in an activity protected by the statute, and that he suffered an adverse employment action because he engaged in that activity. See, e.g., Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).

Thus, plaintiff must allege that he engaged in an activity protected by § 1981, and must identify that action; and must, as to each defendant he claims retaliated against him, allege facts showing that the defendant took some action against him because he engaged in that activity, and that the result was that he suffered an adverse employment action.

Finally, in order to state a claim for workplace harassment or hostile work environment, a plaintiff must allege facts indicating that he was subjected to unwelcome verbal or physical conduct based on his race, and that the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. See, e.g., Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003); Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993); Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986). In addition, occasional or isolated incidents are not actionable, and a plaintiff must show a concerted pattern of harassment of a repeated, routine, or generalized nature. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Thus, in order to state a claim in the present case for harassment under § 1981, plaintiff must allege facts as to each defendant, showing that the defendant subjected him to a concerted or repeated pattern of unwelcome verbal or physical conduct because of his race, and also showing that the unwelcome conduct was so severe or pervasive as to alter the conditions of his employment or to create an abusive working environment.

    b.  Claim under § 1983

In the second cause of action under § 1983, plaintiff alleges discrimination and harassment against the individual defendants (Peterson, Zellis-Holder, and MacMaster), in violation of the Fourteenth Amendment.[3] As with the § 1981 claim, has failed to clearly state the facts that support each of these claims, and has also failed to specify which defendant each claim is being asserted against. It is not sufficient for plaintiff to allege "on information and belief that the [d]efendants acted in concert with one another" to deprive him of his rights under the Fourteenth Amendment.

To state a claim under § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated, and that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Here, plaintiff appears to be asserting that defendants violated his right to equal protection, which includes the right to be free from workplace discrimination and harassment based on race.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citation omitted); Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005) (evidence of different treatment of unlike groups does not support an equal protection claim).

---

[3] In prior iterations of the complaint, plaintiff alleged a violation of the Equal Protection Clause of the Fourteenth Amendment. Here, plaintiff asserts only that defendants deprived him of "rights, privileges and guarantees under the Fourteenth Amendment. However, the court assumes that plaintiff intends to assert an Equal Protection violation.

10

To state a claim for an equal protection violation, a plaintiff must allege facts showing that a defendant acted with an intent or purpose to discriminate against him based on his race, and that he was treated differently from persons similarly situated. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); see also Washington v. Davis, 426 U.S. 229, 239-40 (1976); Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001).

Here, plaintiff may satisfy this standard by alleging facts showing that a particular defendant treated him differently from others similarly situated; that this unequal treatment was based on considerations of race; that the defendant acted with discriminatory intent in applying this classification; and that plaintiff suffered injury as a result of the discriminatory classification. See, e.g., Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979); see also Lam v. City and County of San Francisco, 868 F.Supp. 2d 928, 951 (N.D. Cal. 2012).

It is insufficient for plaintiff to allege that defendants "acted in concert." He must allege facts as to each defendant, showing that the defendant engaged in discriminatory or harassing conduct, that the conduct was intentional, and that the conduct was motivated by considerations of plaintiff's race. It is also insufficient for plaintiff to simply allege – without more – that he was "treated differently than other similarly situated non-African American" employees. He must allege facts showing that there were similarly-situated non-African-American employees who were treated more favorably.

      c.    Monell claim

Finally, plaintiff alleges a § 1983 claim against the County, asserting discrimination in violation of the Fourteenth Amendment. However, while he alleges in a conclusory fashion that the County has a custom, policy, practice of allowing racial discrimination, he has alleged no facts in support of this contention, and moreover has not identified any such custom, policy, or practice that caused the alleged deprivation of his constitutional rights.

Local governments are "persons" subject to suit for constitutional violations under § 1983. See Monell v. Department of Soc. Servs. of the City of New York, 436 U.S. 658,

691 (1978). However, local governments can only be sued where the claims arise out of unconstitutional actions by their employees who implement or execute a "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers . . . ." Id. at 690-91. That is, a public entity "cannot be held liable solely because it employs a tortfeasor." Id. at 691.

A Monell claim for § 1983 liability against a public entity may be stated in one of three circumstances – (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of "deliberate indifference" to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing Supreme Court authorities); Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).

Here, plaintiff has failed to state a claim against the County under this standard. It is not clear whether plaintiff is attempting to assert this claim under only one of the circumstances listed above, or under all three. More significantly, plaintiff has failed to allege facts sufficient to state a plausible claim under any theory of municipal liability.

Prior to Iqbal and Twombly, the long-standing rule was that a plaintiff need only make "a bare allegation that the individual [defendants'] conduct conformed to official policy, custom, or practice." Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 623 (9th Cir. 1988). Indeed, the Supreme Court rejected a heightened pleading standard for Monell claims in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993). Nevertheless, while neither Iqbal nor Twombly explicitly overruled Leatherman, the pleading standard for Monell claims has been thrown into question, and, in the Ninth Circuit at least, has been modified.

In Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012), the Ninth Circuit considered the impact of Iqbal and Twombly, and concluded that a pleading of municipal liability "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and that the facts

12

must "plausibly suggest an entitlement to relief." Id. at 1216 (citations omitted). Subsequently, in AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631 (9th Cir. 2012), the court noted the impact of Twombly/Iqbal on pleading standards, and applied Starr to municipal liability claims, holding that "plausible facts supporting a policy or custom . . . could . . . cure[ ] the deficiency in [a] Monell claim." Id. at 636-38.

Here, plaintiff alleges, first, that Peterson, Zellis-Holder, and MacMaster were all policymakers "at the time of their conduct," but does not plead any facts showing that they ratified a subordinate's unconstitutional conduct, or any facts showing that they had final authority to establish municipal policy with respect to a specific action ordered. He also asserts that there was "a practice of discrimination against African-Americans" by senior attorneys and "supervisor" [sic] of the District Attorney's Office, which resulted in "African-Americans being demoted and transferred differently from their non-African-American counterparts," but does not explain what the "practice" was (other than to refer to it as "discrimination") and does not identify any African-American District Attorneys who were affected by this "practice."

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990); see also Bouman v. Block, 940 F.2d 1211, 1231-32 (9th Cir. 1991). Plaintiff has not alleged any facts showing that "discrimination" against African-American attorneys is a longstanding practice, or that it is so widespread as to have the force of law.

Plaintiff asserts further that "the practices" of the District Attorney's office "resulted in disparate treatment of the [p]laintiff," but as explained above with regard to the second

13

cause of action, fails to plead facts showing that he was treated differently than similarly situated non-African-American attorneys.

## CONCLUSION

In accordance with the foregoing, defendants' motion to dismiss is GRANTED. The dismissal is with leave to amend. If plaintiff chooses to file a fifth amended complaint ("5thAC"), he shall do so no later than October 30, 2013. No additional claims or parties may be added without leave of court.

This is the last time that leave to amend will be granted. By permitting yet another opportunity to amend, the court is exercising leniency in light of plaintiff's pro per status. The court notes, however, that plaintiff is an attorney and that he is expected to be able to follow the explicit instructions provided in this order. Any amended complaint must set forth facts under each separate cause of action establishing the elements of each cause of action and tying each defendant individually to specific conduct that supports each element. It will not suffice for plaintiff to set forth a rambling narrative of the acts about which he complains without a nexus between those acts and each defendant and the elements of each claim. If plaintiff is unable to allege sufficient facts to state a claim as to at least one cause of action, the case will be dismissed with prejudice. No hearing will be held on any further motion to dismiss. The court will issue a decision on the papers.

**IT IS SO ORDERED.**

Dated: September 27, 2013

PHYLLIS J. HAMILTON
United States District Judge